124 F.3d 457
 Alan D. SMITH; Kathleen Mackay; Adam G. Christian;
Barbara Weatherly; Appellees,
De Vos & Co.; Virgin Islands Bar Association,
v.
Clement MAGRAS, Individually and in His Capacity As Comm. Of
Dept. of Licensing and Consumer Affairs
Clement Magras &*Government of the Virgin
Islands, Appellants.
 No. 96-7660.
 United States Court of Appeals,
Third Circuit.
 Argued April 8, 1997.
Decided Aug. 14, 1997.
 
 Julio A. Brady, Attorney General, Paul L. Gimenez, Solicitor General, Frederick Handleman (Argued), Assistant Attorney General, Virgin Islands Department of Justice, St. Thomas, U.S. Virgin Islands, for Appellants.
 Denise Francois (Argued), Adam G. Christian, Hodge and Francois, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for Appellees.
 Before: BECKER, ROTH and WEIS, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 The Virgin Islands legislature has enacted a business licensing scheme pursuant to which every person "wishing to engage in any business, occupation, profession or trade" listed in the statute is required to obtain a license and pay an annual license fee. V.I.Code. Ann. tit. 27, § 301(a) (1997). One of the listings is "Attorney," for which the annual fee is $500. See id. § 302. The question presented in this appeal is whether the license fee must be paid by attorneys whose sole practice (and income) is as law firm employees. The obligation of law firm partners and of sole practitioners to obtain a license and pay the fee is unquestioned.
 
 
 2
 The plaintiffs are four attorneys who are members of the Virgin Islands Bar, a law firm, and the Virgin Islands Bar Association (collectively, "the plaintiffs"). In September 1992, defendant Clement Magras, Commissioner of the Virgin Islands Department of Licensing and Consumer Affairs ("Commissioner"), informed the plaintiffs that they were required to obtain a business license from his department in order to practice law in the Virgin Islands. After some correspondence which failed to resolve the matter, the plaintiffs brought suit in the Territorial Court of the Virgin Islands. That court issued an injunction against collection of the fees; the Appellate Division of the District Court of the Virgin Islands affirmed. The Territorial and District Courts concluded that, under the statutory scheme, the obligation to obtain a license runs only to the partners of the firm for which the non-owner attorneys work. The appellate panel grounded this interpretation on its reading of the statutory language; on the Commissioner's historical interpretation of the statute, to which it apparently gave some deference; and on its belief that application of the licensing provisions to non-owner attorneys might, in view of the sanctions available to the Commissioner for non-payment of the license fees, somehow trench upon the power of the courts to regulate the practice of law.
 
 
 3
 Finding the statutory language quite clear and susceptible to no interpretation other than that all attorneys, whether or not employed by others, are subject to the license requirement and fee, we reverse. We therefore need not reach the administrative interpretation issue. We also summarily reject the plaintiffs' argument that the application of the licensing scheme to all attorneys would violate the Equal Protection Clause. Further, given the concession by the Commissioner that he would not employ his power under the licensing scheme to interfere with the judiciary's role in regulating the professional conduct and competence of attorneys, and given the absence of any pending or threatened action that might involve such interference, we have little difficulty with the contention that the licensing scheme infringes the power of the courts to regulate the bar. In the course of discussing the power of the courts to regulate the bar, we hold, for the first time, that the principle of separation of powers applies to the coordinate branches of the Virgin Islands government.
 
 I. THE LICENSING STATUTE
 
 4
 Consideration of the contentions of the parties requires that we set forth the relevant text of §§ 301 and 302. It is as follows:
 
 
 5
 § 301. Licenses required; application forms; qualifications and limitations
 
 
 6
 (a) Every person or association wishing to engage in any business, occupation, profession, or trade listed in section 302 of this chapter, as a condition precedent to engaging in any such business, occupation, profession, or trade, shall apply in writing to and obtain from the Commissioner of Licensing and Consumer Affairs (referred to as the "Commissioner" in the remainder of this chapter) a license to engage in or to conduct such business, occupation, profession or trade.
 
 
 7
 (b) Applications for licenses under this chapter shall be made on forms prescribed and furnished by the Commissioner. As part of or in connection with any application the applicant shall furnish information concerning his identify, personal history, experience, business record, purposes, record of any conviction of any offense which is a felony or crime involving moral turpitude in the jurisdiction where the offense occurred, and any other pertinent facts that the Commissioner may reasonably require.
 
 
 8
 In the case of corporations or partnerships the preceding requirements shall be applicable to all of the shareholders or partners....
 
 
 9
 (c) If the applicant is a partnership or a corporation, the application shall designate each member, officer, or employee who will exercise the powers to be conferred by the license upon such partnership or corporation. The Commissioner may require any such member, officer or employee to furnish him with the information required of applicants under subsection (b) of this section.
 
 
 10
 ....
 
 
 11
 § 302. Same; business, occupations, professions and trades covered; fees
 
 
 12
 (a) The following annual license fees are made applicable to and shall be levied upon all persons and associations engaged in the designated businesses, occupations, professions and trades in the Virgin Islands of the United States:
 
 
 13
 ...
 
 Attorney [$] 500
 
 14
 ....
 
 
 15
 We will refer to these provisions throughout our discussion. We also attach the schedule contained in § 302 as an appendix.
 
 
 16
 II. PROCEDURAL HISTORY; THE APPELLATE PANEL OPINION
 
 
 17
 In September 1992, the Commissioner issued letters to the plaintiffs informing them that they were required to obtain business licenses pursuant to the Virgin Islands licensing statute. The plaintiffs responded that, as employees of law firms whose partners or shareholders were properly licensed, there was no requirement that they be licensed individually. The plaintiffs requested a hearing. More correspondence followed, culminating in the Commissioner's threats to publish the names of the plaintiffs not in compliance with the licensing statute and to refer the matter for possible criminal prosecution.
 
 
 18
 The plaintiffs brought suit in the Territorial Court of the Virgin Islands. The Territorial Court issued a permanent injunction enjoining the Commissioner from collecting license fees from non-owner attorneys who work at law firms. The Commissioner appealed.
 
 
 19
 In affirming the order of the Territorial Court, the Appellate Division of the District Court proceeded from a rendering of the statute that highlighted certain words and phrases. In § 301(a), the appellate panel underscored "[e]very person or association." In § 301(b), it stressed the provision that "[i]n the case of corporations or partnerships the preceding requirements shall be applicable to all of the shareholders or partners." And, in § 301(c), it highlighted the following sentence:If the applicant is a partnership or a corporation, the application shall designate each member, officer, or employee who will exercise the powers to be conferred by the license upon the partnership or corporation.
 
 
 20
 (emphasis added by Appellate Division).
 
 The panel then stated:
 
 21
 The only reasonable, logical and consistent inference we draw from the highlighted words is that the license is to be granted to the partnership or corporation itself, not to "each member, officer or employee who will exercise the powers of the license."
 
 
 22
 The panel then turned to the interpretation given the statute by the administrative agency charged with its enforcement. The panel looked to the form distributed by the Commissioner to all license applicants, which, inter alia, requests the applicant to check off:
 
 
 23
 "TYPE OF ORGANIZATION" it is: a sole proprietorship, reflecting the word "person" used in subsections 301(a) & (b) and 302(a); or a corporation, a partnership, a joint venture, reflecting the word "association" in those same subsections.
 
 In the Appellate Division's view:
 
 24
 The only mention of employee is the application's request for the total estimated number of employees; it does not require the applicant to identify these employees by listing their names and/or positions. None of the remaining requirements on the application form have any relevance to the question whether separate license fees can be taxed to attorney-employees of private law firms.
 
 
 25
 The court also noted that, prior to Commissioner Magras's September 1992 letters, the Commission had not required an attorney to apply for and pay for a separate business license unless the attorney had an ownership interest in the law partnership or corporation that employed him or her. It also pointed out that, although "Travel Ticket Agent" is listed as an occupation required to obtain a license, the department does not require a travel agent working as an employee of a travel agency to pay a separate license fee. The court analogized the non-owner attorney in a law firm to an employee of a travel agency and concluded that the two should be treated similarly. The court opined that a non-owner attorney in a law firm is not conducting business. Rather, the court reasoned, a nonowner attorney is working on behalf of the firm, which is conducting business.
 
 
 26
 Finally, the court cautioned that the provisions of the licensing scheme allowing the Commissioner to base licensing decisions on the moral character or misconduct of the licensee violated the principle of separation of powers. Because such provisions effectively regulated attorneys in the Virgin Islands, the court reasoned, they impermissibly allowed the Commissioner, at least potentially, to operate in areas under the exclusive control of the judiciary.
 
 
 27
 The plaintiffs' arguments before us have essentially tracked the appellate division's position. In addition, they contend that applying the licensing scheme to non-owner attorneys would deny such attorneys equal protection of the laws. That is so, they submit, because these attorneys would be required to pay the licensing fee while other, allegedly similarly situated employees would not be so required.
 
 
 28
 The Commissioner appeals from the order of the appellate division. The Commissioner argues that the plain language can be interpreted only to mean that the licensing requirements apply to all attorneys, and, in the alternative, that any ambiguity in the statute should be resolved in favor of the agency charged with its interpretation, which, in this case, determined that the statute applies to all attorneys. The Territorial Court had original jurisdiction pursuant to V.I.Code Ann. tit. 4, § 76(a) (Supp.1994). The Appellate Division had jurisdiction over the appeal from the Territorial Court pursuant to V.I.Code Ann. tit. 4, § 33 (Supp.1994). We have jurisdiction over the appeal of the final order of the appellate division pursuant to 48 U.S.C. § 1613a(c).
 
 
 29
 We review the grant of a permanent injunction for abuse of discretion. See International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. Mack Trucks, Inc., 820 F.2d 91, 94-95 (3d Cir.1987). "An abuse of discretion exists where the district court's decision rests upon a clearly erroneous-finding of fact, an errant conclusion of law, or an improper application of law to fact." Id. at 95. Statutory construction is a legal question, over which we exercise plenary review. See Air Courier Conference of America/Int'l Comm. v. United States Postal Serv., 959 F.2d 1213, 1217 & n. 3 (3d Cir.1992). Therefore, in the context of the present appeal, if, after our plenary review, we conclude that the Territorial Court erred as a matter of law in interpreting the licensing statute, we may say that it did not act within its discretion in issuing the permanent injunction.
 
 III. DISCUSSION
 
 30
 A. Professional Licensing Schemes in General
 
 
 31
 Licensing schemes similar to that at issue here are not uncommon. More often than not, these schemes, by their very terms, apply to attorneys. Their form varies: some operate statewide, others are local enactments; some merely generate revenue by way of fees, others include regulatory provisions that govern conduct. Not surprisingly, there is a substantial body of state law governing such arrangements. See David B. Sweet, Annotation, Validity of state or municipal tax or license fee upon occupation of practicing law, 50 A.L.R.4th 467 (1986); 9 Beth A. Buday & Julie Rozwadowski, McQuillin, The Law of Municipal Corporations §§ 26.128, 26.130 (3d ed.1995). Often, attorneys subject to these schemes will challenge them on numerous grounds, basing their challenges on federal and state constitutional or statutory law. Although we have undertaken no systematic study, our research indicates that, for the most part, these arrangements are largely unobjectionable and are ordinarily approved by state courts.
 
 
 32
 Without attempting our own synthesis of the case law, we offer some representative examples of cases addressing such schemes. In Sterling v. City of Philadelphia, 378 Pa. 538, 106 A.2d 793 (1954), an oft-cited case, the Supreme Court of Pennsylvania upheld a city ordinance that established a mercantile tax that applied to attorneys. In so doing, the court reasoned that a pure revenue-raising measure does not infringe on the power of the state courts to regulate attorneys because such a measure does not affect the rights and duties of an attorney in carrying out his profession. See id. at 796-98. It stated further that "the privilege of practicing law carries with it no exemption from the duties of citizenship, including the sharing with all others the expense of government, national, state and municipal." Id. at 796. Courts reaching a similar conclusion include Kradolfer v. Smith, 246 Mont. 210, 805 P.2d 1266 (1990), Mire v. City of Lake Charles, 540 So.2d 950 (La.1989), Gleason v. City Council of Augusta, 242 Ga. 796, 251 S.E.2d 536 (1979), and Lublin v. Brown, 168 Conn. 212, 362 A.2d 769 (1975).
 
 
 33
 Courts have taken a different view of measures that include regulatory provisions placing conditions on the practice of law. For example, in Sexton v. City of Jonesboro, 267 Ga. 571, 481 S.E.2d 818 (1997), the Supreme Court of Georgia invalidated a municipal ordinance that required, as a precondition to engaging in the practice of law, the payment of a fee. Although it recognized the right of local governments to tax attorneys, the court held that this particular measure was regulatory and therefore infringed on the exclusive power of the courts to regulate attorneys. See id. at 820. At least one court has even invalidated a measure that was non-regulatory and only revenue-raising. In Sharood v. Hatfield, 296 Minn. 416, 210 N.W.2d 275 (1973), the Supreme Court of Minnesota held that a statute that diverted registration fees collected statewide from attorneys to general treasury funds improperly infringed on the constitutionally provided, exclusive power of the courts to regulate attorneys. See id. at 279-82.
 
 
 34
 Sexton and Sharood notwithstanding, it is the rare case in which licensing schemes are found infirm. See generally, Sweet, supra §§ 11-13. On the contrary, such schemes are routinely upheld, even in the face of challenges based on state constitutional law.B. Plain Language
 
 
 35
 We begin our analysis by examining the relevant language of the Virgin Islands statute. The general standard for statutory interpretation is well known and not in dispute here. The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., --- U.S. ----, ----, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). If so, our inquiry is at an end. See id. Of course, interpretation of a statute involves the examination of the statute as a whole. See id. In that sense, we must endeavor to give each word of the statute operative effect. See Walters v. Metropolitan Educ. Enters., --- U.S. ----, 117 S.Ct. 660, 664, 136 L.Ed.2d 644 (1997). In other words, "[s]tatutory construction 'is a holistic endeavor.' " United States Nat'l Bank of Or. v. Independent Ins. Agents, 508 U.S. 439, 452, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) (quoting United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988)).
 
 
 36
 In our view, the language of the statute in dispute is entirely plain. Section 301 requires "[e]very person or association wishing to engage in any business, occupation, profession, or trade listed in section 302" to obtain a license to do so. V.I.Code Ann. tit. 27, § 301(a) (1997) (emphasis added). Section 302 states that the license fee requirement is "made applicable to and shall be levied upon all persons and associations engaged in the designated businesses, occupations, professions and trades." Id. § 302 (emphasis added). "Attorney" is listed in § 302. See id. Therefore, the plain language of the statute unambiguously states that every individual who wishes to practice as an attorney must obtain a license.[1] We believe the case to be that simple.
 
 
 37
 We also note that the statute distinguishes between instances in which an entity is potentially subject to a license and those in which individuals, including employees, are potentially subject to a license (depending on whether the entity or individual is "engaged in" the listed activity). For example, because "[b]aby sitting service" is listed in § 302 as an entity, i.e., the relevant licensee is the "service" as an entity, only the service itself, and not the employees of the service, would be subject to the licensing requirement. By contrast, because "[a]ttorney" is listed in § 302 as an individual, each individual attorney is subject to the licensing requirement, whether he or she is an employee or not. In certain circumstances, the statute also requires a license of both the entity and the employees. For example, § 302 requires a license of a "[b]arber shop" and of each "[b]arber," "[b]arber apprentice," and "[b]arber temporary." In short, the distinctions that the Virgin Islands legislature drew in § 302 strongly suggest that the legislature intended to require licenses of entities in some instances, of employees of entities in others, and of both entities and employees in still others.[2] By employing the term "[a]ttorney," the legislature appears to have intended to license attorneys as individuals.
 
 
 38
 The plaintiffs only response to the foregoing is to argue that this interpretation cannot be reconciled with the language of other provisions of the licensing statute. In particular, they submit that these other provisions (highlighted supra at part I) make it clear that in corporate or partnership settings, only the corporation or partnership, and not the employees, need obtain a license. Because nonowner attorneys in a law firm are mere employees, the plaintiffs reason that these other provisions exempt nonowner attorneys from the licensing requirements. We disagree.
 
 
 39
 The plaintiffs point first to the second paragraph of § 301(b), which governs the information a corporation or partnership must submit with an application for a license. Under that paragraph, when a corporation or partnership applies for a license, "all of the shareholders or partners" must submit certain information along with the corporation's or partnership's application. Id. § 301(b). Because § 301(b) only requires information from "shareholders or partners," the plaintiffs submit that nonshareholders and non-partners are exempt from the licensing requirements altogether. The plaintiffs read too much into this provision. The second paragraph of § 301(b) governs, by its very terms, only the application of corporations or partnerships. It does not govern individual applications at all.
 
 
 40
 We note that requiring non-shareholders and nonpartners to submit information along with the corporation or partnership for whom they work would make little sense. Such individuals have no de jure say in the governance of the applicant corporation or partnership, so the licensing body should have no interest in non-shareholders or nonpartners when determining whether to license a corporation or partnership qua corporation or partnership. Excluding non-shareholders and non-partners from the requirements of the second paragraph of § 301(b), then, is merely a recognition of the internal structures of corporations and partnerships. That exclusion says nothing about whether a non-shareholder or a non-partner need make his own application for a license.
 
 
 41
 The plaintiffs, however, read § 301(c) as bolstering their argument as to the second paragraph of § 301(b). Section 301(c) requires that a corporation or partnership"designate each member, officer, or employee who will exercise the powers to be conferred by the license upon such partnership or corporation." Id. § 301(c). Each designee may then be required to submit certain information along with the application of the corporation or partnership. See id. The plaintiffs contend that this language does not mean that the designated "member, officer, or employee" is subject to the licensing requirements. That may be so, but the argument does not "advance the ball" in this case. Nothing in § 301(c) states that "each member, officer, or employee" is not subject to the licensing requirements.
 
 
 42
 Moreover, like the second paragraph of § 301(b), § 301(c) only applies to applications of corporations or partnerships; it says nothing about applications of individual persons. And, again like the second paragraph of § 301(b), § 301(c) is merely a recognition of governance in corporations or partnerships. A designated "member, officer, or employee," by § 301(c)'s definition, will be exercising power within the corporation or partnership. Therefore, the licensing body may have some interest in that "member, officer, or employee" when considering whether to license the corporation or partnership. In short, the fact that the licensing body may require § 301(c) designees to submit certain information is simply inconclusive as to whether those designees, or any other individual, are subject to the licensing requirements.[3]
 
 
 43
 The plaintiffs further claim that our reading of the statute would produce, as they describe it, the absurd result that every individual employee in every venture in the Virgin Islands would be subject to the licensing requirements. We believe the plaintiffs incorrectly characterize our reading of the statute. As we have already noted, the statute, by its very terms, makes clear that not all employees are subject to the licensing requirements. Further, whether an individual is subject to the licensing requirement depends on whether the individual is "engaged in the designated business[ ], occupation[ ], profession[ ] and trade[ ]." Id. § 302 (emphasis added). The issue here, then, is whether the non-owner attorneys are "engaged in" the profession of "[a]ttorney," and it is clear beyond doubt that the nonowner attorneys are "engaged in" in the profession of "[a]ttorney."
 
 
 44
 As practicing attorneys in the Virgin Islands, the plaintiffs must be active members of the Virgin Islands bar. See V.I. Terr. Ct. R. 305(b). As active members of the Virgin Islands bar, the plaintiffs must be engaged in the practice of law. See id. at 306(a). Therefore, the fact that the plaintiffs are practicing attorneys leads ineluctably to the conclusion that they are engaged in being attorneys. See Mayor & Council of Wilmington v. Dukes, 157 A.2d 789, 793 (De.1960) (classifying employee physicians as carrying out the medical profession); Brinton v. City of Jonesboro, 229 Ark. 944, 320 S.W.2d 272, 273 (1959) (classifying employee attorneys as carrying out the legal profession).[4] This conclusion is not affected by the fact that the attorneys at issue in this case are non-owner attorneys in a law firm.[5] Further, that nonowner attorneys at law firms may be "engaged in" the profession of "[a]ttorney" does not determine whether other employees, in other fields, are "engaged in" a listed business, occupation, profession, or trade.[6]
 
 
 45
 In sum, the plain language of the statute renders it applicable to non-owner attorneys employed by law firms.[7]
 
 C. Separation of Powers
 
 46
 The plaintiffs contend that applying the licensing requirements to them would violate the principle of separation of powers. They argue that the judicial branch of the Virgin Islands enjoys exclusive control over the regulation of the practice of law in the Virgin Islands. Because the licensing scheme is itself a form of regulatory control, the plaintiffs continue, imposing that scheme on attorneys would allow executive agencies to regulate attorneys and thereby to encroach on the judiciary's domain. Of particular concern to the plaintiffs are those provisions of the licensing statute that allow executive agencies to deny a license to or revoke a license from those whose moral character or misconduct renders them unfit to engage in business in the Virgin Islands, see V.I.Code Ann., tit. 27 § 304(a)(2) (1997), or those who allow improper or wrongful behavior on their business premises, see id. § 304(a)(3). The plaintiffs also profess concern about those provisions that allow the executive agencies to enjoin a person from engaging in business without a license. See id. §§ 307(c), 307a(b). The plaintiffs' concerns (and their claims) must, however, be deemed tempered by the Commissioner's explicit disclaimer, in this court, of authority to interfere with the court's control over lawyers: "At no time has the [Commissioner] disagreed with the power of the court to regulate the professional conduct of attorneys." Appellant's Reply Brief at 4. Moreover, the Commissioner acknowledges that "the court licenses to regulate professional conduct and competence." Id. There is no action before the court--or apparently even contemplated by the Commissioner--to disbar a delinquent attorney or to regulate his professional practice, judgment, or activity. Thus the potential infringement is more modest than was originally supposed. The plaintiffs have nonetheless mounted a separation of powers-based challenge to the statute even insofar as it requires licensure, and hence we must address the issue.[8]
 
 
 47
 At the threshold, we hold that the doctrine of separation of powers applies with respect to the coordinate branches of government in the Virgin Islands. The Organic Act of the Virgin Islands created three branches of government in the Virgin Islands. See 48 U.S.C. § 1571 (legislative branch); id. § 1591 (executive branch); id. § 1611 (judicial branch). Congress therefore implicitly incorporated the principle of separation of powers into the law of the territory. See Springer v. Government of the Philippine Islands, 277 U.S. 189, 199-202, 48 S.Ct. 480, 481-82, 72 L.Ed. 845 (1928).
 
 
 48
 In Springer, the Supreme Court examined the structure of government in the Philippines, then a territory of the United States. The Court noted that Congress, in enacting the Philippine Organic Act, created three branches of government. See id. at 201, 48 S.Ct. at 481. In so doing, the Court continued, Congress incorporated the principle of separation of powers into Philippine law. It stated that "as a general rule inherent in the American constitutional system ... unless otherwise expressly provided or incidental to the powers conferred, the Legislature cannot exercise either executive or judicial power; the executive cannot exercise either legislative or judicial power; the judiciary cannot exercise either executive or legislative power." Id. at 201-02, 48 S.Ct. at 481-82.[9]
 
 
 49
 Because the issue before us is whether the licensing scheme infringes on judicial power, we must first discuss the scope of the relevant judicial power. The Organic Act, as amended in 1984, provides that "[t]he rules governing the practice and procedure of the courts established by local law and those prescribing the qualifications and duties of the judges and officers thereof ... shall be governed by local law or the rules promulgated by those courts." 48 U.S.C. § 1611(c) (emphasis added). It is thus clear from the Organic Act itself that local law--enacted by the Virgin Islands legislature--may have some role to play in the regulation of attorneys (officers of the court). Put differently, the Organic Act envisions the possibility of the sharing of power over the regulation of attorneys between the Virgin Islands courts and the Virgin Islands legislature, at least to the extent of imposing a license fee. The possibility of that sharing itself disposes of the argument that the application of the licensing scheme to attorneys violates the principle of separation of powers.
 
 
 50
 The plaintiffs and the appellate division, however, point to provisions of the Virgin Islands Code that, they contend, provide the judiciary with exclusive control over the regulation of attorneys in the Virgin Islands. The first provision is V.I.Code Ann. tit. 4, § 441 (1967 & Supp.1994). Section 441 grants jurisdiction over the regulation of attorneys in the Virgin Islands to the district court. But, even if § 441 retains any vitality after the passage of 48 U.S.C. § 1611(b) and V.I.Code Ann. tit. 4, § 76(a) (Supp.1994), see In re Application of Moorhead, 27 V.I. 74, 80-84 (V.I.Terr.Ct.1992) (holding that § 1611(b) and § 76(a) shift control over the regulation of attorneys in the Virgin Islands from the district court to the Territorial Court), it would not provide support for the contentions of the plaintiffs. Section 441 does not, by its terms or otherwise, vest exclusive control over the regulation of attorneys in the judiciary. Moreover, nothing in Moorhead or § 76(a), to which the plaintiffs also point, alters the possibility of the sharing of power arrangement embodied in § 1611(c).
 
 
 51
 The plaintiffs also seek support for their argument from the inherent power of courts to control the admission of attorneys to practice before them. Although the inherent power of the courts to regulate attorneys is well established, see, e.g., Ex parte Secombe, 60 U.S. (19 How.) 9, 13, 15 L.Ed. 565 (1857), it is also well established that legislatures have the power to cabin inherent power in courts of their own creation. See Chambers v. NASCO, Inc., 501 U.S. 32, 47, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991); see also Secombe, 60 U.S. (19 How.) at 13-14. Although not directly on point, Secombe and Chambers provide some instruction. Congress allowed for the creation of local Virgin Islands courts; it can certainly restrict their power. In this case, Congress did so by including in § 1611(c) the possibility of a sharing arrangement.
 
 
 52
 We have held that the exercise of legislative power in this regard is at least partially circumscribed. In Eash v. Riggins Trucking, Inc., 757 F.2d 557 (3d Cir.1985) (en banc), we described three categories of inherent powers: (1) irreducible powers derived from Article III over which courts have absolute command; (2) essential powers that Congress may regulate but not abrogate or render practically inoperative; and (3) useful powers that exist only in the absence of legislative directive to the contrary. See id. at 562-64. It cannot seriously be said, however, that the power to regulate attorneys is one of the irreducible powers of a court completely immune from legislative interference. As we explained in Eash, such powers exist in "an extremely narrow range of authority involving activity so fundamental to the essence of an autonomous court as a constitutional tribunal that to divest the court of absolute command within this sphere is really to render practically meaningless the terms 'court' and 'judicial power.' " Eash, 757 F.2d at 562.
 
 
 53
 But even assuming that the power to regulate attorneys is essential to the functioning of a court, the interference here is minimal and in no way renders inoperative that power. Congress has not, by § 1611(c), abrogated the power to regulate attorneys; it has merely allowed for the division of that power. At all events, there can be no dispute that attorneys, like other citizens, are subject to criminal and administrative sanctions as well as the usual collection remedies for failure to pay taxes or licensing fees. Enforcement of such obligations does not impair the judiciary's supervision of the Bar. See, e.g., Sterling v. City of Philadelphia, 378 Pa. 538, 106 A.2d 793, 796-97 (1954).
 
 
 54
 Our discussion is not inconsistent with the state court cases that have invalidated similar licensing schemes because such schemes infringe on the power of the courts to regulate attorneys. Such cases are grounded on the exclusive control over the regulation of attorneys the particular state had vested in its judiciary. We mention one case as an example. In Harlen v. City of Helena, 208 Mont. 45, 676 P.2d 191 (1984), the Supreme Court of Montana invalidated a city ordinance requiring a fee of all persons or entities carrying out business in the city. See id. at 192. Vital to the court was the fact that it had exclusive authority, pursuant to the state constitution, to promulgate rules governing attorneys. See id. at 193.
 
 
 55
 In sum, the principle of separation of powers is not violated by the application of the Virgin Islands licensing scheme to attorneys. The order of the appellate division affirming the order of the Territorial Court issuing a permanent injunction against enforcement of the licensing statute against non-owner attorneys will be reversed.
 
 
 56
 WEIS, Circuit Judge, dissenting.
 
 
 57
 The Territorial Court and the Appellate Division of the District Court of the Virgin Islands read the licensing provisions as a whole and construed them to be generally directed to business entities, partnerships, and corporations, rather than to individual employees. I agree and would affirm.
 
 
 58
 The statute says in very broad terms that "[e]very person or association wishing to engage in any business, occupation, profession, or trade listed in section 302" must obtain a license. V.I.Code Ann. tit. 27, § 301(a) (1997). In turn, section 302 lists several hundred occupations, services, professions, and callings, including such diverse classifications as itinerant vendors, judo instructors, machine shops (but not machinists), masonry contractors (but not masons), master plumbers, modeling agencies (but not models), pharmacies (but not pharmacists), public accountants, and attorneys. Section 302 includes restaurants classified by the number of tables, but does not list cooks or waiters.
 
 
 59
 The fees for section 302 licenses range from $10 for a temporary barber to $2,000 for business management or consulting firms representing 100 or more foreign service corporations. As a catchall, section 302(b) provides that "[a]ny person or association engaged in a business, occupation, profession, or trade" not listed "or not covered by any other provision of this Code shall obtain an annual license at a fee of $100."
 
 
 60
 Despite the majority's view to the contrary, the statute, on its face, applies to every person who receives compensation from an "occupation" as well as to those individuals who engage in a business, profession, or trade. The only exemptions are those specified in section 306 for governmental, religious, charitable, benevolent, and educational organizations.
 
 
 61
 Despite the broad language in sections 301 and 302, the government does not contend that the licensing statute was intended to cover such an all encompassing swath of the working population. Indeed, the government disclaims such an expansive interpretation. The simple language construction adopted by the majority, therefore, has been rejected by the licensing body itself.
 
 
 62
 From the record, it appears that the government has not enforced the wording of the catchall clause, rather it has pursued a policy of licensing business entities instead of their employees. For example, the Territorial Court observed that, in a prior proceeding, an official of the Consumer Service Administration (entrusted with enforcement of the statute) testified that although travel agents are listed in section 302, they "are not required to be licensed, unless they possess an ownership interest in the business for which they work, because they are not professionals, but merely employees." Smith v. Magras, Civ. No. 167/1993, 1993 WL 566406 at * 5 (Terr.Ct.V.I. Dec. 17, 1993).
 
 
 63
 The statute itself, in sections 301(b) and (c), requires that an application for a license be made on a form furnished by the Commissioner of Licensing and Consumer Affairs. Applicants must provide information about their personal history, experience, business record, and criminal record. In designating who should submit applications, section 301(b) states that "[i]n the case of corporations or partnerships the preceding requirements" apply to "all of the shareholders or partners." In all cases,"such requirements shall be applicable to the actual owners and not merely to the nominal owners." Id.
 
 
 64
 Significantly, employees of corporations and partnerships are not listed among those who must submit information. Thus, in the case of a corporation, as the statute reads, a shareholder must submit personal data, but the president, who is merely an employee, need not. Similarly, as to partnerships, the statute makes no mention of "employee." Subsection 301(c), however, provides that a corporation or partnership application "shall designate each member, officer, or employee who will exercise the powers to be conferred by the license upon such partnership or corporation." This subsection does not in any way require an employee to apply for a license.
 
 
 65
 Although the Commissioner now takes the position that all lawyers in private practice must pay the license because it is personal to them, that principle has not been consistently applied. As the district court noted, in the past, the Commissioner had not required an attorney to pay a licensing fee "unless the attorney had an ownership interest in the law partnership or corporation by which she was employed." Magras v. Smith, 940 F.Supp. 124, 129 (D.Vi.1996).
 
 
 66
 To adopt the Commissioner's current position that a license is personal would mean that an automobile mechanic who is employed by a repair shop (which must be licensed under section 302(a)) must also obtain a license for his occupation or trade under section 302(b). Similarly, a carpenter employed by a large construction firm would have to obtain an individual license, as would a clerk in a retail establishment. That, however, is not what the Commissioner's practice is, or has been.
 
 
 67
 The Commissioner's litigation posture in an earlier case in this Court is revealing. Section 306 exempts "agencies of the Virgin Islands or of the United States Government, [ ] religious, charitable, benevolent, or educational associations." Significantly, that section does not mention "employees" of such institutions. However, in Hollar v. Government of the Virgin Islands, 857 F.2d 163, 171 (3d Cir.1988), the government argued that because they are merely employees of various agencies, government attorneys fall under the blanket exclusion.
 
 
 68
 Additionally, the Commissioner contended that government attorneys were only employees because their pre-determined salaries did not depend on the attorneys' caseload or success rate. See Smith, 1993 WL 566406 at * 4 (discussing the Commissioner's arguments in Hollar). That latter comment, of course, is irrelevant and, in any event, may well be said of an associate attorney employed by a law firm.
 
 
 69
 To be consistent, the Commissioner's position that an attorney working for a government salary is an employee and, as such, not subject to the tax, should carry over to an employee lawyer of a law firm who similarly should not be obligated to obtain a license. The exemption of employee lawyers is what the government successfully advanced in Hollar and that status should apply to plaintiffs here as well.
 
 
 70
 The district court's conclusion that the statute should be construed to apply only to partners in law firms or sole practitioners who have a proprietary interest is, I believe, the proper reading. The district court's construction pays due fealty to the canon of construing the statute as a whole, gives due regard to the government's consistent application over the years, and results in a rational interpretation of the legislation. I would affirm.
 
 APPENDIX
 
 71
 § 302 Same; business, occupations, professions and trades covered; fees
 
 
 72
 (a) The following annual license fees are made applicable to and shall be levied upon all persons and associations engaged in the designated businesses, occupations, professions and trades in the Virgin Islands of the United States:
 
 
 73
 Additional place of brokers business $ 50
Advertising 150
Air cargo transportation 500
Air charter service per plan 100
Air conditioning and refrigeration repair shop 125
Answering service 75
Apartment house A, more than 12 units 250
Apartment house B, 9"12 units 220
Apartment house C, 5"8 units 150
Apartment house D, 4 or less units 100
Appliance repair shop 100
Appraiser 100
Armored car service 300
Artist studios 100
Astrology service 100
Attorney 500
Auto cleaning and polishing service 100
Automobile towing service 100
Automobile undercoating 100
Automotive inspection and diagnostic services 100
Automobile mechanical road service 100
Baby sitting service 100
Baggage, cargo, mail handling 225
Bakery 200
Barber 50
Barber apprentice 25
Barber shop initial issuance 150
Barber shop renewal 75
Barber temporary 10
Battery and ignition repair 100
Beach club 100
Beautician apprentice 30
Beautician temporary 10
Beauty school 200
Beauty shop initial issuance 150
Beauty shop renewal 75
Billiard table per table 30
Blasting service 150
Blender, bottler of alcohol beverages 800
Boat building and repair 125
Boat charter service per boat 100
Boat rental 100
Bookkeeping services 100
Bowling alley 300
Bus transportation per bus 50
Business and management consultant 300
Business courses and related training 250
Business Management or Consulting Firm for Foreign Sales Corporations:
Firms managing or consulting for less than 5 Foreign Sale Corporations 500
Firms managing or consulting for at least 5 but less than 100 Foreign 1,000
 Sales Corporations
Firms managing or consulting for 100 or more Foreign Sales Corporations 2,000
Butchery 300
Cable car sightseeing tours 125
Cable splicing and related work 150
Cable television and antenna service 150
Car leasing 100
Car Rental A--0 to 20 vehicles 200
Car Rental B--21 to 50 vehicles 300
Car Rental C--more than 50 vehicles 400
Carpentry contractor 75
Carpet laying and related services 125
Catering service 100
Certified public accounting 300
Charm school 100
Check room service 50
Claim adjusters 150
Clinical laboratory 300
Club liquor license 200
Cockfighting 500
Coffee shop and ice cream parlor 100
Coin operated car wash 100
Commercial art services 100
Commercial boat, freight or passengers 100
Commercial breeding services 100
Commercial diver 100
Commercial kennel 100
Commercial laundry 200
Commercial school 250
Commercial warehousing 150
Commodity exchange clearing house 300
Common carrier int. telecommunication 150
Communication equipment inst. contractor 150
Communication equipment oper. contractor 150
Concrete pumping 250
Construction contractor 200
Consultation and related therapy services 125
Copyright protection service 100
Cottage rental 100
Credit bureau and collection agency 200
Customs and visa preparations service 100
Dance studio 50
Dealer in explosives Public Safety 500
Dental laboratory 350
Development and sale of own property 75
Discotheque--same as night club
Documentation services for vessels steam ship agent 150
Dog grooming shop 100
Draftsman 75
Driving school 200
Dry cleaning 200
Dry docking services 200
Drywall--sheetrock installation contractor 75
Electrical contractor 100
Electronic security consultant 150
Employment agency 100
Escort service 200
Exterminating and pest control 150
Fiduciary services 100
Fingerprint services 100
Firearms and ammunition--distributor or wholesaler 1,000
Firearms and ammunition--retail sales 550
Firearms and ammunition--gunsmith 500
Fire prevention service 100
Fireproofing contractor license 150
Florist 150
Flower conserv. and agricultural nursery 100
Flying school 250
Foreign Sales Corporation 100
Free lance photographer 100
Garage and repair shops 200
Garbage removal 100
Gasoline station 250
General aviation service and maintenance 125
General manufacturing--glass 150
General manufacturing--food 150
General manufacturing--tobacco 150
General manufacturing--textile 150
General manufacturing--clothes 150
General manufacturing--public printing 150
General manufacturing--chemical 150
General manufacturing--petroleum 1,000
General manufacturing--rubber 1,000
General manufacturing--leather 150
General manufacturing--metal 500
General manufacturing--fabricated metal 500
General manufacturing--machinery 500
General manufacturing--electrical machinery 500
General manufacturing--transportation equipment 300
General manufacturing--watches 350
General manufacturing--miscellaneous 300
Glass tinting contractors 75
Golf course 150
Guard dog service 100
Hair removal service 75
Health club or spa 300
Holding company 200
Hotel and guest house A--over 100 beds 400
Hotel and guest house B--over 40"99 beds 300
Hotel and guest house C--1"39 beds 200
Hotelkeeper--liquor 200
Hypnotism consultant 100
Ice manufacturing 250
Importer of goods for resale 200
Information and data processing services 100
Installation of equipment 75
Installation of fences 75
Installation of fire and burglary alarm systems 200
Interior decorating 100
Investment advisory service 200
Investment brokerage 400
Itinerant vendor license 50
Janitorial service and supply 150
Jewelry and watch repair shop 100
Judo instructor 100
Karate instructor 100
Kindergarten school 200
Landscaping consultant 100
Landscaping, garden, maintenance service 100
Laundromat 200
Laundry pickup and delivery service 100
Leasing of plants 100
Lie detection service 100
Liquor wholesalers license 400
Machine shop 100
Manicurist apprentice 10
Manufacturers of aerated waters 150
Manicurist 75
Marine biological supplies 100
Marine salvage and Rel undeater service 150
Marine surveyor and blastg service 150
Marine surveyor and conltant 150
Masonry contractor 75
Massage parlor 150
Master electricia 100
Master plumber 100
Media adverting, promotion and production 200
Medical labatory 300
Messengernd delivery service 100
Misc. asement devices 150
Mobilfood service 100
Mobe refreshment stand 75
Meling agency 100
Mortgage banker 200
Mortgage broker 400
Motion picture distribution 150
Motion picture theater 500
Motor vehicle dealer 500
Moving and freight forwarding services 200
Music recording and sales business 200
Nickelodeon per machine 30
Night club license 700
Nutrition and consulting services 100
Oceanographic research and development 100
Out patient care facility 100
Owners representative coordinator 100
Painting contractor 75
Paralegal services 100
Parking lot vehicle 100
Pharmacy 300
Photocopying services 75
Photographic processing or studio 50
Piano technician 100
Pin ball and similar machines per machine 50
Plastering contractor 75
Plumbing contractor 100
Pollution control services 100
Poultry farm--agriculture
Prime distillers of alcoholic beverages 1,500
Printing and publishing house 250
Private elementary/secondary school 200
Production of milk and milk products 125
Project coordinator/consultant 75
Public accountant 120
Public auctioneer 100
Public dance license 25
Public relations services 100
Public title reporter 100
Radio and television repair shop 100
Radio advertising, promotion and production 200
Radio station 500
Real estate broker 250
Real estate salesman 200
Real estate salesman--temporary 100
Real estate--change business place 50
Real estate--change of associate 50
Red cap porter service 50
Rent of real property (other than buildings) 100
Rental of equipment 100
Rental of non-residential building 150
Rental watersports equipment 100
Repair and maintenance of misc. items 100
Restaurant A--Seating capacity 25 or more 200
Restaurant B--Seating capacity less than 25 125
Retail shop and store--except liquor 100
Retailers liquor license 250
Riding academy 75
Rooming house 100
Rug and furniture cleaning on location 100
Sailing school 200
Sale of prepaid hotel reservation 125
Sales and marketing concepts 50
Sales finance 200
Salvage and sale of used parts 100
Scheduled air service 700
School of ceramics 100
School of language 100
School of music 100
School of philosophy 100
School of underwater photography 100
Scooter and/or motorcycle rental 150
Scrap metal collection and sales 100
Scrap paper collection and sales 100
Scrap plastic collection and sales 100
Scuba diving school and related services 125
Secretarial service 100
Security analyzing service 100
Septic tank cleaning 150
Sewer cleaning and rodding services 150
Sewerage maintenance and operational engineering services 150
Sewing school 100
Sheet metal and iron work shop 150
Ship chandler 100
Shoe repair shop 75
Sightseeing and tour operations 100
Sign painting 75
Silk screen manufacturing 150
Skating rink 175
Solicitor, sales and commission agent 75
Sporting and recreational camp 100
Sports instructor 100
Sports promoter 150
Sprinkle system installation contractor 75
Steamship and shipping agents 150
Stevedoring license 100
Summer school 100
Swimming instruction 100
Swimming pool installation contractor 150
Tailoring and alteration service 100
Tavernkeeper A--distilled and fermented spirits 250
Tavernkeeper B--fermented spirits only 150
Tax consultant 100
Telegraph office 350
Television station 600
Temporary help contracting agency 100
Tennis club 100
Theatrical production, except motion picture 100
Theatrical promoter and booking agent 150
Theatrical variety employment service 150
Tile setting contractor 75
Tire recapping and retreading service 100
Tobacco Retailer 100
Tobacco Wholesaler 500
Transient disco service 75
Transient amusement operator 500
Translation services 100
Travel and ticket agent 150
Tree surgery 100
Trucking, transportation and delivery 100
Typewriter repair shop 100
Undertaking business 500
Upholstery shop 100
Used car lot 100
Vehicle inspection service 100
Vending machine A-- License--0 through 5 machines 100
Vending machine B-- License--6 through 20 machines 150
Vending machine C-- License--21 through 50 machines 200
Vending machine D-- License--more than 50 machines 400
Vocational training school 100
Water skiing school 100
Water supply services 150
Waterproofing contractor 75
Welding services 100
Wholesaler and other than liquor 250
Writing school 100
Yacht brokerage service 100
 
 
 74
 (b) Any person or association engaged in a business, occupation, profession, or trade not designated in subsection (a) of this section or not covered by any other provision of this Code shall obtain an annual license at a fee of $100.
 
 
 
 *
 (pursuant to Rule 12(a) F.R.A.P.)
 
 
 [1]
 The statute exempts attorneys who work for the government. See V.I.Code Ann. tit. 27, § 306 (1997). We have earlier held that the exemption is valid and does not violate the principle of equal protection. See Hollar v. Government of the Virgin Islands, 857 F.2d 163, 171 (3d Cir.1988)
 
 
 [2]
 It is unclear whether the Commissioner has enforced the licensing statute against all the employees who may be subject to its requirements. At all events, a claim of impermissible selective enforcement has not been raised and we do not reach that issue
 
 
 [3]
 The plaintiffs also argue that our interpretation would render § 303(a) meaningless in certain circumstances. Section 303(a) requires that the licensing body forward applications for licenses to agencies in the Government of the Virgin Islands charged with historic preservation and environmental protection so that those agencies can examine the application for "construction and site acceptability." Id. § 303(a). Because it would make little sense to review the applications of non-owner attorneys with respect to "construction and site acceptability," the plaintiffs reason that non-owner attorneys are not subject to the licensing requirements. To the extent that this argument has any force, and we think it does not, it seems totally immaterial for it proves too much. By their reasoning, the licensing requirements would not apply to the numerous persons or associations, listed in § 302, who would not necessarily construct a building nor even need a building in which to operate their business, engage in their occupation, practice their profession, or carry out their trade. If the plaintiffs are correct in their argument about § 303(a), then the licensing requirements would apply to none of these businesses, occupations, professions, or trades. Section 303(a) does not exempt a person or association from the licensing requirements simply because he, she, or it is not concerned with the construction or siting of a building
 The plaintiffs further argue that § 303b(a) supports their position. Section 303b(a) requires that "[a]ny entity licensed pursuant to this chapter shall notify the Employment Security Agency, Virgin Islands Department of Labor, of its intent to fill an existing position, now vacant or soon to become vacant, or a new previously unfilled position." Id. § 303b(a). Because non-owner attorneys are in no position to hire anyone, the plaintiffs reason that non-owner attorneys must not be subject to the licensing requirements. This argument is also flawed. First, by its very terms, § 303b(a) only applies to entities; it does not apply to individual persons. Second, the argument similarly proves too much. By the reasoning of the plaintiffs, § 303b(a) would exempt numerous businesses, occupations, professions, and trades listed in § 302 from the licensing requirements. Just because these businesses, occupations, professions, or trades--by their very nature--will not be hiring any employees does not mean that § 303b(a) exempts them from the licensing requirements. If § 303b(a) did work such exemptions, then these businesses, occupations, professions, and trades would be read out of § 302.
 
 
 [4]
 The plaintiffs point to language in § 306, the exemption for government attorneys, see supra note 1, for further support of their position. They note that the section will not apply if the exempted individual is "engaged in the conduct of business pursuits for profit." V.I.Code Ann. tit. 27, § 306 (1997). According to the plaintiffs, such language implies that the licensing scheme applies only to the business entity and not to employees, because it is the business entity that is seeking the profits. We believe such language implies exactly the opposite. If the licensing scheme applied only to business entities and not to employees, there would be no need for the exemption in the first place; government attorneys are mere employees
 
 
 [5]
 We caution that our holding extends only to those non-owner attorneys of law firms who work in the Virgin Islands and have been admitted to the Virgin Islands bar to practice before the local courts by the regular admission rules. Our holding does not address those attorneys who have been admitted to the Virgin Islands bar pro hac vice or by the special admission rules, who do not ordinarily work in the Virgin Islands, or who have been admitted in the Virgin Islands only to practice before the District Court of the Virgin Islands. We do not reach the question whether such attorneys are "engaged in" being attorneys in the Virgin Islands
 
 
 [6]
 The kernel of Judge Weis' argument is that, while the statute, particularly § 302(b), seemingly covers virtually everyone in the work force, the (inconsistent) administration of the statute negates that view, and counsels that employees are simply not covered. As we have noted above, see supra, note 2, the matter of selective enforcement is not before us. We do note, however, that Judge Weis reads too much into the catch-all provision. As we understand the reference to "[a]ny person or association engaged in a business, occupation, profession, or trade" not listed or not covered by any other provision of this Code, who is to obtain an annual license at a fee of $100, it deals with a new occupation that did not previously exist (e.g. "Internet Counsultant"), or an occupation not at all mentioned in § 302(a), either on its own, or as part of an entity
 
 
 [7]
 Our conclusion about the plain language of the statute effectively disposes of the argument, advanced by the Commissioner, that we must give deference to the interpretation given the statute by the agencies charged with enforcing it. This argument is drawn from Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Assuming without so holding that the principles of Chevron apply to the relationship of the executive agencies and the courts in the Virgin Islands, the well-known two-part test enunciated in Chevron would dictate that our inquiry here begins and ends with the first part of the test, whether the statute is ambiguous. Because the statute here is clear, there is no need to move to the second part of the test, whether the agency has permissibly construed the statute. Similarly, our conclusion about the plain language effectively disposes of the argument, advanced by the plaintiffs, that ambiguous statutory language dealing with licensing schemes is to be interpreted against the government. Assuming without so holding that this is a correct proposition of law, that proposition would have no place in this case because, as we have discussed, the language of the statute is not ambiguous
 Finally, the plaintiffs contend that our reading of the licensing statute would render the licensing scheme in violation of the Equal Protection Clause. We have considered that contention and find it utterly baseless. We therefore reject it summarily.
 
 
 [8]
 See Appellees Brief at 15 et seq
 
 
 [9]
 In addition to Springer, we draw support for our conclusion from two other lines of authority. The first is our own jurisprudence. We have often assumed, without squarely holding, that the doctrine of separation of powers applies with respect to the coordinate branches of government in the Virgin Islands. See, e.g., Territorial Ct. of the Virgin Islands v. Richards, 847 F.2d 108, 112 (3d Cir.1988); Government of the Virgin Islands v. Harrigan, 791 F.2d 34, 37 n. 1 (3d Cir.1986); Dennis v. Luis, 741 F.2d 628, 631-38 (3d Cir.1984); Block v. Potter, 631 F.2d 233, 239-40 (3d Cir.1980). The second is the jurisprudence of the District Court of the Virgin Islands and the Territorial Court, which have routinely applied the doctrine of separation of powers. See, e.g., Bryan v. Liburd, CIV. No. 711/96, 1996 WL 785997, at * 2 (Terr.Ct.V.I. Dec. 30, 1996); Dawsey v. Government of the Virgin Islands, 931 F.Supp. 397, 401 (D.Vi.), aff 'd, 106 F.3d 384 (3d Cir.1996), cert. denied --- U.S. ----, 117 S.Ct. 2459, 138 L.Ed.2d 216 (1997); Luis v. Dennis, 576 F.Supp. 733, 734 (D.Vi.1983), vacated by 751 F.2d 604 (3d Cir.1984); Municipality of St. Thomas & St. John v. Gordon, 78 F.Supp. 440, 442-44 (D.Vi.1948)