In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2497

Ivy Mason, on her own behalf and
on behalf of those similarly situated,

Plaintiff-Appellant,

v.

Peter Sybinski, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 00-0988-C-M/S--Larry J. McKinney, Chief Judge.

Argued January 9, 2002--Decided February 11, 2002


   Before Flaum, Chief Judge, and Harlington
Wood, Jr., and Easterbrook, Circuit Judges.

   Flaum, Chief Judge.  Ivy Mason, on behalf
of herself and a class of past, present,
and future mentally impaired Social
Security recipients who are
institutionalized in Indiana state mental
health institutions, brought action
against the state of Indiana. The class
sought declaratory and injunctive relief
to prevent the state hospitals, appointed
by the Social Security Administration
("SSA" or "the Administration") as
representative payees, from deducting a
portion of the recipients' Social
Security benefits to pay for
institutional maintenance without their
voluntary consent. The class contends
that the state hospitals' actions violate
the anti-attachment provision of the
Social Security Act ("the Act") as well
as procedural due process. The district
court granted summary judgment in favor
of the state on all claims. Mason, on
behalf of the class, now appeals. For the
reasons stated herein, we affirm the
decision of the district court.

I.  Background

   The SSA, when it determines that a
recipient is unable to manage or direct
management of her own Social Security
benefits, appoints a representative payee

to do the job for her. 42 U.S.C. sec.405(j) (2001); 20 C.F.R. sec.404.2001 (2000). Representative payees are subject to a number of Social Security regulations created to prevent misuse or abuse of the funds. The appointed payee must use the payments received only for the "use and benefit" of the beneficiary, "in a manner . . . he or she determines, under the guidelines in this subpart, to be in the best interests of the beneficiary." 20 C.F.R. sec.404.2035. The regulations define "for the use and benefit" of the recipient to include costs of current maintenance, 20 C.F.R. sec.404.2040(a)(1), and define "current maintenance" to include customary charges by a state,federal, or private institution where the beneficiary is receiving care. 20 C.F.R. sec.404.2040(b). The Act states, moreover, that a creditor who provides the beneficiary with goods or services for consideration cannot be that person's representative payee except, inter alia, when that creditor is a state-licensed or certified care facility. 42 U.S.C. sec.405(j)(2) (C)(i)(III); 42 U.S.C. sec.405(j)(2)(C)(iii).

The regulations set forth an order of preference in selecting a representative payee for institutionalized beneficiaries. If a legal guardian, spouse, other relative, or friend who demonstrates a strong concern for the recipient exists, the SSA will generally appoint that person to be the payee. If not, however, the Administration's preference is to appoint the state institution where the recipient resides. 20 C.F.R. sec.404.2021(a).

When the SSA appoints a state hospital as representative payee, it provides notice to the hospital that it must use the payments for the benefit and care of the recipient. The Administration also provides notice to the beneficiary herself that a payee has been appointed and that she has the right to appeal that appointment. The recipient is told that the representative payee will be responsible for managing her benefits. In Indiana, when a state hospital is appointed payee, it verbally informs the beneficiary that her benefits may be used to pay for the cost of their care. Also, the SSA generally informs the beneficiary (and did so, by letter, in Mason's case)

that the hospital, as payee, will apply part of the money toward its bill.

After receiving a recipient's benefit payment, the hospital deposits the money into a trust account. According to guide lines and specific instruction from the SSA, the hospital provides the recipient with spending money for bills, clothing and other reasonable expenses. It also deducts a portion of the benefits to pay for institutional costs. The hospital does not obtain written consent from the beneficiary to allow the state to apply the benefits to the cost of institutionalization.

Under Indiana law, residents of hospitals and institutions are liable for the cost of their treatment and care. Ind. Code sec. 12-24-13 (2001). If a person is legally admitted to a state institution, however, she is entitled to care and maintenance there, regardless of her ability to pay. Ind. Code sec. 12-24-5-4. When a patient is admitted, Indiana mental health institutions generally show her a notification of liability. After the hospital is appointed as representative payee for a patient, however, it does not inform her that she will be treated at the hospital even if she does not use her Social Security benefits to pay for the cost.

Ivy Mason, the class representative, is mentally disabled and has been a resident patient at Richmond State Hospital ("RSH") from July 7, 1992 to January 14, 1993; from October 4, 1994 to June 18, 1999; and from December 4, 1999 to the present. Upon her second and third admissions, pursuant to Indiana law, she signed a "Notification of Liability for Cost and Care of Treatment." From at least January 1998 until her second release, and for the entirety of her current stay at the hospital, RSH has been the representative payee for her Social Security benefits. On January 29, 1998, the SSA awarded Mason Social Security survivor's benefits retroactive to 1989 and informed her that she would be getting both ongoing monthly benefits in the sum of $618 as well as a lump-sum check for $34,408.73 for her back benefits. The SSA told both Mason and RSH that $25,942.73 of the lump-sum check was to be applied to her outstanding hospital bill. RSH did so and, under SSA guidance,

also uses a portion of her monthly benefits check (as of the time of discovery, about $518) to pay her bill (which, again at the time of discovery, was approximately $7,170 per month). As of May 31, 2000, the bill for Mason's care at RSH totaled $412,070.98.

II.  Discussion

We review the district court's grant of summary judgment de novo, construing all of the facts and reasonable inferences that can be drawn from those facts in favor of the nonmoving party. See Central States, Southeast & Southwest Areas Pension Fund v. Fulkerson, 238 F.3d 891, 894 (7th Cir. 2001). A grant of summary judgment is appropriate if the pleadings, affidavits, and other supporting materials leave no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

a.  42 U.S.C. sec.407

The class argues that, although the Social Security Act does allow state hospitals and institutions to act as representative payees, those hospitals cannot apply a resident recipient's benefits to its own costs, absent that beneficiary's consent, without violating the anti-attachment provision of the Act. That provision provides:

The right of any person to any future payment under this subchapter will not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. sec.407

In short, the class members contend that the state's application of recipients' benefits to their cost of care without their specified consent is a form of "other legal process." In support of this argument, they attempt to extend a line of  cases that interprets broadly the sec.407 prohibition against attachment to include the situation where, as here, the state acts as representative payee. In

Philpott v. Essex County Welfare Bd., the Supreme Court held that states are not in a preferred position compared to other creditors; they cannot subject benefit payments to any legal process. 409 U.S. 413 (1973). Similarly, the Supreme Court in Bennett v. Arkansas held that the anti-attachment provision applies to state creditors, such as hospitals, that have provided the beneficiary with care and maintenance. 485 U.S. 395 (1988). This Court has held that when a state hospital asked a resident Social Security recipient to sign a form allowing the state to accumulate her benefits into a trust fund it could use to pay for the cost of care and maintenance, and that form did not inform the patient that it was revocable or that she would be treated regardless of whether she signed it, the state violated the Act's anti-attachment provision. Tidwell v. Schweiker, 677 F.2d 560, 567 (7th Cir. 1982). If the form were signed voluntarily--that is, if the beneficiary were informed that the form was revocable and that she would receive treatment even if she did not sign it--then no violation would have occurred. Id.; see also Crawford v. Gould, 56 F.3d 1162 (9th Cir. 1995) (holding that a state may apply a patient's benefits to the cost of her care only if she has provided consent.)

The class relies heavily on Tidwell to claim that Indiana, in the instant case, unlawfully subjected institutionalized recipients' Social Security benefits to legal process by taking a portion of those benefits without their voluntary consent. The holding of Tidwell, however, as well as those of Philpott and Bennett, did not involve the situation where the state acted as representative payee. In this case, the district court held, and we agree, that a representative payee's decision to apply benefits to the recipient's cost of care in a state institution does not amount to other legal process--even when the payee is the state itself. We decline to extend the Tidwell holding to cover such a circumstance. Moreover, the Supreme Court's decisions in Philpott and Bennett, which hold that just as other creditors do, a state creditor violates the anti-attachment provision when it attaches or subjects to other legal process a recipient's benefits--simply do not apply here because no attachment or legal

process took place. A properly appointed representative payee's responsible management of a Social Security recipient's benefits cannot amount to "other legal process," regardless of whether that payee is an arm of the state.

The Social Security Act and regulations, as outlined above, permit--in fact, encourage--state institutions to act as representative payees and, more pertinently, when acting as payees, to apply recipients' benefits to the cost of their care and maintenance at a state institution where they reside. 20 C.F.R. sec.404.2021; sec.404.2035; sec.404.2040. "Section 407 was not intended to outlaw a procedure expressly authorized by the Social Security Administration's own regulations." King v. Schafer, 940 F.2d 1182, 1185 (8th Cir. 1991). Generally, the Social Security Act prohibits creditors from acting as representative payees. 42 U.S.C. sec.405(j)(2)(C)(i)(III). It does so for the same reason that it includes the anti-attachment provision: to protect beneficiaries' Social Security income from the reach of creditors. The Act explicitly excepts state institutions from this prohibition, 42 U.S.C. sec.405(j)(2)(C)(iii), suggesting first that Congress did not intend money management by representative payees who are also creditors to be included in the ambit of the anti-attachment provision (otherwise the separate prohibition would be redundant), and second that it considered the balance of interests and decided--without noting special restrictions--that, despite the need to protect recipients' benefits from creditors, state institutions should be allowed to act as representative payees.

Tidwell announced the rule that when a state hospital, not acting as representative payee, applies the recipient's benefits to the cost of her care, that action amounts to other legal process unless the recipient gave voluntary consent to remove it from the purview of sec.407. Tidwell, 677 F.2d at 568. We find, for the reasons stated above, that the state's actions in this case do not constitute "execution, levy, attachment, garnishment, or other legal process," and therefore are always outside the ambit of the anti-attachment

provision. The question of whether the resident recipients must give voluntary consent, then, is beside the point. Because the state's actions do not amount to other legal process, the recipient's consent is unnecessary.

The rationale behind the anti-attachment provision is to "protect social security beneficiaries and their dependents from the claims of creditors." Fetterusso v. New York, 898 F.2d 322, 327 (2d Cir. 1990). We do not deny the importance and validity of such protection, even when the "creditor" is the state hospital providing care and maintenance to the recipient. See, e.g., Bennett, 485. U.S. 395; Tidwell, 677 F.2d 560. But, without straying from the goal of protecting the recipients' benefits, Congress and the Social Security Administration saw fit to allow state hospitals to act as representative payees when certain safeguards were met: the payee must use the money for the use and benefit of the recipient, which may include paying for the cost of her current care and maintenance, 20 C.F.R. sec.404.2035, and the SSA must provide notice to the recipient that it intends to name a representative payee, who that payee will be, and that the recipient has the right to object to and appeal the decision. U.S. Const. amend. XIV, Tidwell, 677 F.2d at 564. The class does not contend that the above criteria are not being met. Indiana hospitals follow carefully the SSA's guidelines regarding use of recipients' benefits. They apply a portion of the money to recipients' personal needs--clothing, spending money, and the like--and only then do they apply a portion of the benefits to institutional costs. There is no evidence that the beneficiaries' moneys are left unprotected. Congress has never indicated that representative payees need to obtain beneficiaries' consent before applying their Social Security income in any given manner, so long as that application is for the use and benefit of the recipient. We will not now narrow the discretion that Congress explicitly granted representative payees to use the money "in a manner . . . he or she determines, under the guidelines in this subpart, to be in the best interests of the beneficiary." 20 C.F.R. sec.404.2035.

b.  Due Process

The class further argues that when a state hospital, acting as representative payee, applies a recipient's Social Security benefits to the cost of her institutional care without notice or opportunity to be heard, it violates the patient's right to procedural due process under the Fourteenth Amendment. See, e.g., Goldberg v. Kelly, 397 U.S. 254 (1970). The relevant questions here are: 1) whether the state deprived class members of a protected property interest; and 2) if so, what process is due. See Brokaw v. Mercer County, 235 F.3d 1000, 1020 (7th Cir. 2000). Although the Social Security Administration gives proper notice and opportunity to object when it appoints a representative payee, Tidwell, 677 F.2d at 564, the class contends that when the state, as payee, applies the recipient's benefits to its own costs, further notice and opportunity to object are required because a separate deprivation occurs. The SSA notice, the class claims, does not inform recipients that the payee may use the benefits to pay for the cost of their care or that they will be treated at the institution even if they do not consent to their benefits being applied to its cost. We cannot agree with this logic.

The notice provided by the SSA informs Social Security beneficiaries that their appointed payee will have the authority to manage their receipts so long as they do so in a manner consistent with federal law and for the use and benefit of the recipient. By accepting the appointment of a representative payee, a beneficiary, while retaining some right to her property, does not retain the right to make individual management decisions regarding her benefits unless she utilizes the SSA's appeal process. As discussed above, the state hospitals in question followed all relevant laws and regulations. We find that the state's money management decisions while serving as representative payee do not constitute an additional deprivation of a protected property interest. The threshold question is not answered in the affirmative; therefore, no due process violation has occurred.

III.  Conclusion

For the reasons stated herein, we AFFIRM the judgment of the district court.