**GOVERNMENT OF THE VIRGIN ISLANDS, Appellant**

**v.**

**STEPHANIE WARNER, Appellee**

D.C. Criminal App. No. 2005-28

District Court of the Virgin Islands

Division of St. Thomas and St. John, Appellate Division

July 22, 2009

DOUGLAS J. JUERGENS, AAG, St. Thomas, USVI, *For the Appellant.*

MARIE E. THOMAS-GRIFFITH, ESQ., St. Thomas, USVI, *For the Appellee.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and DONOHUE, *Judge of the Superior Court, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

(July 22, 2009)

The Government of the Virgin Islands (the "Government") appeals from an order of the Superior Court of the Virgin Islands, Division of St. Thomas and St. John (the "Superior Court")[1] for the conditional release from a mental health facility of Stephanie Warner ("Warner").

## I. FACTS

In 1990, the Superior Court ordered that Warner be involuntarily committed and placed in the custody of the Virgin Islands Department of Health pursuant to title 19, section 723 of the Virgin Islands Code ("Section 723"). *See* V.I. CODE ANN. tit. 19, § 723 (1984). Warner became an inpatient at the Eldra Schulterbrant Long Term Care Unit in St. Thomas, U.S. Virgin Islands (the "Facility").

On January 24, 2005, the Superior Court conducted a review hearing regarding Warner's involuntary commitment at the Facility. The focus of the proceeding was to determine whether a suitable alternative placement could be arranged for Warner upon her conditional release from the Facility.[2]

---

[1] Prior to 2005, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. See Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, this Court employs the terms Superior Court and Superior Court Judge.

[2] During the hearing, the trial judge stated that he had reviewed the comprehensive treatment plan that had been prepared for Warner, and did not need to hear any testimony with

Brent Woodward ("Woodward"), Acting Director of Health for the Virgin Islands Department of Health, testified that he had not investigated a suitable alternative placement for Warner. Woodward was, however, aware that a comprehensive treatment plan had been prepared for Warner. Woodward stated that the Department of Health had not received any grant money for adult foster care programs for conditionally released patients. Additionally, Woodward testified that there was no existing structure or budget for to allow for long-term foster care placement. He also stated that, as of the date of the hearing, there had never been a budget for such a program. Woodward was not aware of any investigation into alternative funding sources for such placement.

Jaqueline T. Davis ("Davis"), a nurse at the Facility, testified that she had told Woodward that "the only alternative I see is for [Warner] to return home." (Review Hr'g Tr. 23, January 24, 2005.) Davis indicated the Marva Ritter ("Ritter"), Warner's sister, had expressed a willingness to take Warner in rather than have her placed with a stranger. When asked by Warner's attorney about the financial burden for Warner's care upon release, Davis stated: "I think the Department [of Health] needs to actually take the responsibility for her discharge." (*Id.* at 26.)

Ritter also testified at the review hearing. She stated:

> [I]t's difficult for me to actually take my sister, but the sacrifice I will make. Stephanie can be very rebellious if you send her to live with someone else. And my Dad, he is 97 years old and he can't see her being out there without the family structure. Talking with him and talking with my immediate family, we have decided we will try to make the sacrifice and bring her home. Its not going to be easy. Stephanie has no financial backing. We would have to have some kind of financial ability for Stephanie. I cannot do it on my own. The family cannot do it. . . . [T]he other family members cannot take her.
>
> . . .
>
> The Court needs to, in Stephanie's case, well, help me financially in keeping her.

---

respect to Warner's condition. Indeed, the government does not challenge the appropriateness of Warner's release with respect to her condition.

(*Id.* at 32-33.) After all the witnesses had testified, the Court asked Assistant Attorney General Kelly Evans:

> Q. Attorney Evans, you have any idea how much it cost on a daily basis to have Ms. Warner stay at the Schulterbrandt Facility, how much a day it costs the Government?
>
> ATTORNEY EVANS: I do not, your Honor. But if I may recommend to the Court, Your Honor, that Mr. Fredricks is one of the supervisors, if he could show cause, if he could be ordered here to edify the [c]ourt in terms of that information, Your Honor.
>
> THE COURT: Well, I'm not going to have any more edification. I'm going to order the Government — effective immediately, I'm going to discharge Ms. Warner into the custody of Mrs. Ritter by the end of the week. I'm going to order the Government to start making appropriate accommodations for the family for her care. The Government has to find the money in the Department of Health's budget to assist in the care of Ms. Warner.
>
> . . .
>
> And I'm also going to order that the Department of Health immediately start processing reasonable monthly payments for Ms. Warner's care while she is in the custody of her sister, Mrs. Ritter.
>
> . . .
>
> In other words, I intend that Mrs. Ritter start receiving assistance immediately from the Government for Ms. Warner's care, while she [is] in the custody of Mrs. Ritter.

(*Id.* at 36-38.)

On January 29, 2005, the Government filed a motion for reconsideration in the Superior Court. The motion requested reconsideration of the rulings made during the January 24, 2005, review hearing.

On February 24, 2005, while the motion for reconsideration was still pending, the trial court entered a written order memorializing the rulings it made at the January 24, 2005, review hearing. The February 24, 2005,

order directed that Warner be "discharged from the Eldra Schulterbrandt Long Term Care Unit into the custody of her sister, Mrs. Marva Ritter . . . ." (Order, *Gov't of the V.I. in the Matter of Stephanie Warner,* V.I. Super. Ct. I.C. No. 51/1990, Feb. 24, 2005) (hereinafter, "February 24, 2005, order"). The February 24, 2005, order also stated that "the Government . . . shall arrange reasonable financial payments to M[r]s. Ritter for the care of Ms. Warner . . . ." (*Id.*) Additionally, the February 24, 2005, order directed the Government to continue to provide for: Warner's medication; her outpatient treatment at the Division of Mental Health, Alcoholism and drug Dependancy Services at Barbel Plaza in St. Thomas; and for necessary vocational services for Warner after her release. The February 24, 2005, order did not mention the Government's pending motion for reconsideration.

The Government filed the notice of appeal in this matter on March 3, 2005. In its appeal, the Government contends that the Superior Court erred in ordering the Government to make support payments to individuals who care for people who are conditionally released from a Virgin Islands mental health facility.

## II. JURISDICTION

This Court has jurisdiction to review final judgments and orders of the Superior Court of the Virgin Islands. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a; Act No. 6687 § 4 (October 29, 2004).

■ Warner argues that this matter is unripe for appeal because the Superior court never explicitly denied the Government's motion for reconsideration. The Supreme Court has explained that when a party timely files a proper motion for reconsideration of an otherwise final judgment, the finality of such judgment is suspended for as long as the motion is pending. *See United States v. Dieter,* 429 U.S. 6, 8, 97 S. Ct. 18, 19, 50 L. Ed. 2d 8 (1976) ("[T]he consistent practice in civil and criminal cases alike has been to treat timely petitions for rehearing as rendering the original judgment nonfinal for purposes of appeal for so long as the petition is pending."); *Communist Party of Indiana v. Whitcomb,* 414 U.S. 441, 94 S. Ct. 656, 38 L. Ed. 2d 635 (1974) ("Appellees' motion for reconsideration of October 3 suspended the finality of the Judgment of September 28 until the District Court's denial of the motion on October 4 restored [the finality of the Judgment]."); *cf. Gov't of the V.I. v. Harmon,* 289 F. Supp. 2d 685, 687 n.5 (D.V.I. 2003) (explaining that a judgment is

final when "it terminates the litigation between the parties on the merits and leaves nothing to be done but to enforce by execution what as been determined" (internal citation and quotation omitted)).

However, the record below suggests that the Government's motion for reconsideration was not properly filed in accordance with Local Rule of Civil Procedure 7.4 ("Local Rule 7.4").[3] Local Rule 7.4 provides that "[a] party may file a motion asking a judge . . . to reconsider an order or decision made by that judge. . . . Such motion shall be filed within ten (10) days after the entry of the order or decision unless the time is extended by the court. . . ." L.R.Ci. 7.4 (2000); *see also Sasso v. Hackett*, 45 V.I. 375, 378 (Super. Ct. 2004).

■ Here, the trial judge made an oral ruling at the review hearing on January 24, 2005. However, the Government filed its motion for reconsideration on January 29, 2005, *before* the entry of the written February 24, 2005, order that was the subject of the motion for reconsideration. *See* FED. R. CIV. P. 58 (b) ("Judgment is considered entered . . . when it is entered in the civil docket"); *see also Danzig v. Virgin Isle Hotel, Inc.*, 4 V.I. 223, 278 F.2d 580 (3d Cir. 1960). The Government's motion for reconsideration was premature. As such, it did not affect the finality of the February 24, 2005, order directing Warner's release and financial support.

■ Additionally, the February 24, 2005, order *sub silentio* denied the Government's motion for reconsideration. *See Pramco II, LLC v. Smith*, 2007 U.S. Dist. LEXIS 59210, at *5 (D.V.I. Aug. 9, 2007) (unpublished) "Final judgment necessarily denies pending motions, and so starts the time for appeal." (quoting *Dunn v. Truck World, Inc.*, 929 F.2d 311, 313 (7th Cir. 1991)); *see also Goodman v. New Horizons Community Service Bd.*, 2006 U.S. App. LEXIS 9040, at *8 (11th Cir. April 12, 2006) ("[T]he entry of a final judgment implicitly denies any pending motions."); *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981) ("The denial of a motion by the district court, although not formally expressed, may be implied by the entry of final judgment . . . ."); *Cohen v. Curtis Pub. Co.*, 333 F.2d 974, 977 (8th Cir. 1964) ("[T]he entry of final

---

[3] Local Rule 7.4 applies in the Superior Court pursuant to Superior Court Rule 7. *See* SUPER. CT. R. 7 ("The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the Rules of the District Court, [and] the Federal Rules of Civil Procedure . . . .").

judgment in a cause is in effect an overruling of all motions pending prior thereto in the case." (internal citation and quotation omitted)); *Elliott v. Folino*, 2007 U.S. Dist. LEXIS 38695, at *2 (W.D. Pa. 2007) (explaining that an order granting the defendant's motion to dismiss without addressing the plaintiff's pending motions operated to deny such pending motions *sub silentio*). As such, the motion for reconsideration was not pending when the Government filed its Notice of Appeal on March 3, 2005.

Accordingly, the Government's motion for reconsideration did not affect the finality of the February 24, 2005, order, or this Court's jurisdiction over the instant appeal.

## III. STANDARD OF REVIEW

We review *de novo* questions of law, such as issues of statutory interpretation. *Mapes Monde, Ltd. v. A.H. Riise Gift Shop, Inc.*, 337 F. Supp. 2d 704, 707, 46 V.I. 297 (D.V.I. App. Div. 2004); *see also Files v. ExxonMobil Pension Plan*, 428 F.3d 478, 486 (3d Cir. 2005).

## IV. ANALYSIS

The Government argues that the Superior Court lacked the authority to order it to provide financial assistance to Ritter for Warner's support while conditionally released. The Government contends that it is under no statutory obligation to make such support payments. Accordingly, the Government argues that the Superior Court exceeded its authority in directing the executive branch to make such payments.

■■ The division of government powers among three branches of government, each separate but all coordinate, is fundamental to the United States constitutional structure and to the government of the United States Virgin Islands. *See* 48 U.S.C. §§ 1571, 1591, and 1611 (creating the legislative, executive, and judicial branches, respectively, of the Virgin Islands government); *see also Smith v. Magras*, 124 F.3d 457, 465, 37 V.I. 464 (3d Cir. 1997) ("Congress therefore implicitly incorporated the principle of separation of powers into the law of the territory."); *cf. Springer v. Gov't of the Philippine Islands*, 277 U.S. 189, 199-202, 48 S. Ct. 480, 481-82, 72 L. Ed. 845 (1928) (finding that Congress incorporated the separation of powers doctrine into Philippines law). As the Supreme Court has explained:

594

The functions of government under our system are apportioned. The legislative department has been committed to the duty of making laws, to the executive the duty of executing them, and to the judiciary the duty of interpreting and applying them in cases properly brought before the courts. The general rule is that neither department may invade the province of the other and neither may control, direct, or restrain the action of the other.

*Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S. Ct. 597, 601, 67 L. Ed. 1078 (1923).

If the Virgin Islands legislature has imposed an obligation on the Government to make post-release support payments, the judiciary may properly interpret and apply the statute creating the obligation. In doing so, the court may order the Government to act in accordance with its statutory duties. Therefore, the Court must determine whether the Virgin Islands government is obligated by statute to provide for the financial support of mentally incompetent individuals. *See Mason v. Sybinski*, 280 F.3d 788 (7th Cir. 2002) (noting that the duty to support mentally incompetent persons may be imposed by statute); *see also In re Stephen B.*, 17 A.D.3d 584, 793 N.Y.S.2d 149 (2d Dep't 2005) (holding that absent a statutory or contractual obligation, a public authority is not liable for the support of an incompetent person).

Title 19, chapter 31 of the Virgin Islands Code ("Chapter 31") provides for the treatment of individuals suffering from mental illness, alcoholism, and drug addiction. *See* 19 V.I.C. §§ 710-29, *et seq.* Warner was committed under Chapter 31, section 723 ("Section 723"), which "outlines the procedures required for the Court to involuntarily commit a person to the custody of the Department of Health for an indefinite period . . . ." *Gov't of the V.I., In the Matter of: K.D.*, 41 V.I. 57, 59 (Terr. Ct. 1999) (distinguishing Section 723 from Section 722, which sets forth the process for emergency commitment, over which the Superior Court lacks jurisdiction). However, the court "may not order commitment of a person unless it determined that the Department of Health is able to provide adequate and appropriate treatment . . . ." *Id.* at § 723(d); *see also* § 723(f) (requiring the Department of Health to "provide for adequate and appropriate treatment of a person committed to its custody"). Once committed, an individual remains in the custody of the Department of Health until otherwise ordered by the court. *Id.* at § 723(e).

The Superior Court ordered Warner to be conditionally released under Chapter 31, section 723a ("Section 723a"). *See id.* at § 723a (providing for the conditional release of an individual committed under Section 723 when "the clinical needs of such person do not require active inpatient care and treatment, but still may require follow-up care and monitoring"); *see also Gov't of the V.I., In the Matter of: A.D.*, 41 V.I. 65, 70 (Terr. Ct. 1999). Section 723a requires that the conditional release be made in accordance with a "written service plan" prepared by a psychiatrist or attending physician familiar with the person to be released. *See* 19 V.I.C. § 723a(a)(2). The Plan must include: (1) "a statement of the patient's need, if any, for supervision, whether by a family member or other third party custodian, medication, [and] after-care services;" (2) "a specific recommendation of the type of residence in which the patient is to live and a listing of the services available in such residence;" and (3) "a listing of organizations, facilities, including those of the department, and individuals who are available to provide services in accordance with the identified needs of the patient." *Id.* at § 723a(3)(A).

Neither Section 723 nor Section 723a explicitly address liability for support of individuals conditionally released from involuntary commitment into the custody of a relative.[4] However, Warner contends that such payments fall within the ambit of the general statutory duties imposed on the Government through Chapter 31.

Chapter 31 clearly stresses the need for a comprehensive continuum of treatment. *See id.* at § 710 (1977). Section 717 of Chapter 31 provides that the treatment programs must include: (1) emergency treatment, (2) inpatient treatment, (3) intermediate treatment, and (4) outpatient follow-up treatment. *See id.* at § 717(b). Section 719 of Chapter 31 ("Section 719") states: "[p]rovision shall be made for a continuum of coordinated treatment services, so that a person who leaves a facility or a form of treatment will have available and utilize other appropriate treatment." *Id.* at § 719(5).

Further, Chapter 31 requires the Department of Health to cooperate with organizations and individuals in the community for the treatment of

---

[4] Chapter 31 obligates the Department of Health to provide "adequate and appropriate treatment" for individuals who have been committed to its custody. *See id.* at §§ 717(c), 723(d), (f). Here, however, the trial court specifically ordered that "Ms. Warner shall be discharged from the Eldra Schulterbrandt Long Term Care Facility into the custody of her sister, Mrs. Ritter." (February 24, 2005, order.)

mentally disturbed persons. Chapter 31, section 714 ("Section 714") requires the Department of Health to "encourage and foster Territory-wide regional and local plans and programs . . . for the treatment of the mentally ill, alcoholics, intoxicated, and drug dependent persons in cooperation with . . . individuals . . . ." *Id.* at § 714(1). The Department of Health must "coordinate the efforts and enlist the assistance of all public and private agencies, organizations, and individuals interested in . . . the treatment of the mentally ill . . . ." *Id.* at § 714(2). "All appropriate public and private resources shall be coordinated with and utilized in the program if possible." *Id.* at § 717(e).

█ A comprehensive reading of Chapter 31 reveals that it imposes a duty upon the Government to provide mentally disturbed persons with intermediary, outpatient, and follow-up treatment. The Government is also required to collaborate with individuals in the community, and to pool public and private resources in providing such treatment.

█ Significantly, the statute defines the term "treatment" as "the broad range of emergency, outpatient, intermediate and inpatient services and care, including diagnostic evaluation, medical, psychiatric, psychological and social service care, vocational rehabilitation and career counseling . . . ." *Id.* at § 711(12); *see also id.* at § 717(a)-(b). That definition is broad and unambiguous. It encompasses a range of professional and social services, but it does not include items related to personal financial support, such as room and board. To hold otherwise would impose upon the Government a duty to provide food, housing, and other support to every person receiving intermediary, outpatient, or follow-up treatment through the Department of Health, Division of Mental Health, Alcoholism, and Drug Dependency. That could not be what the Legislature of the Virgin Islands contemplated when it enacted Chapter 31.

Consistent with Chapter 31, the February 24, 2005, order memorialized a collaborated effort between the Government and Ritter to provide the least restrictive and most appropriate care for Warner. The February 24, 2005, order required the Government to provide Warner with medication, outpatient services, and vocational training. Those directives satisfied the Government's duties under Chapter 31.

█ However, the trial judge directed the Government to make monthly "support payments" to Ritter for Warner's care. The support payments were ordered in addition to the medication, outpatient services,

and vocational training that comprised Warner's required "treatment" under Chapter 31. The trial judge effectively read a support requirement into Chapter 31. In so doing, the Superior Court exceeded its authority to interpret and apply the laws. *See, e.g.*, *Duvall v. Atty. Gen. of the United States*, 436 F.3d 382 (3d Cir. 2006) (holding that the legislature, not judiciary, has the discretion, based on its own weighing of policy goals, to prescribe the procedures by which an agency will perform its work and render decisions, constrained only by the Constitution); *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 443 (3d Cir. 1977) ("Any misgivings about the technical nature of the requirements under the Act or Regulation should be addressed to Congress and the Federal Reserve Board, not to this Court."); *see also United States v. Parise*, 159 F.3d 790, 799 (3d Cir. 1998) (cautioning that courts must "refrain from reading additional provisions into a statute when its meaning is clear"); *cf. Tyson v. Litwin Corp.*, 826 F.2d 1255, 1260 (3d Cir. 1987) (holding that the district court properly refused to issue a verdict form that would have allowed for the application of the *Murray* doctrine in a personal injury action where no controlling local law existed to support such an application; the adoption of such doctrine in Virgin Islands was best left for legislative consideration).

## V. CONCLUSION

For the reasons stated above, the Court will reverse and remand the February 24, 2005, order. The Superior Court shall be instructed to determine whether Warner's conditional release can be accommodated without requiring the Government to make monthly payments to Ritter in addition to providing Warner's medication, outpatient services, and vocational training. An appropriate Judgment follows.